# EXHIBIT A

# General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☒ State Court of __DEKALB_____ County

<table>
<tr><td colspan="2"><strong>For Clerk Use Only</strong></td></tr>
<tr><td>Date Filed _____<br>MM-DD-YYYY</td><td>Case Number _____</td></tr>
</table>

| Plaintiff(s) | | | | | Defendant(s) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MCBRIDE | CARL | | | | LABAT PATRICK | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | JACKSON JOHN | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | ROBINSON CATHELENE | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | FERGUSON CHYVAUN, ET AL. | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney __Andrew Lampros____   Bar Number __432328____   Self-Represented ☐

## Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
Case Number          Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

# General Civil and Domestic Relations Case Filing Instructions

1. Provide the class of court and county in which the case is being filed.
2. Provide the plaintiff's and defendant's names.
3. Provide the plaintiff's attorney's name and Bar number. If you are representing yourself, provide your own name and check the self-represented box.
4. Provide the type of case by checking only *one* appropriate box. Cases can be either general civil or domestic relations and only *one* type of case within those categories. Check the case type that most accurately describes the primary case. If you are making more than one type of claim, check the case type that involves the largest amount of damages or the one you consider most important. See below for definitions of each case type.
5. Provide the type of post-judgment action, if applicable, by checking the appropriate box. Post-judgment cases are those that seek to enforce or modify an existing judgment. If the case is a post-judgment matter, an initial case type in the general civil and domestic relations boxes must be checked.
6. Provide an answer to the four questions by checking the appropriate boxes and/or filling in the appropriate lines.

## Case Type Definitions

### General Civil Cases

**Automobile Tort:** Any tort case involving personal injury, property damage, or wrongful death resulting from alleged negligent operation of a motor vehicle.

**Civil Appeal:** Any case disputing the finding of a limited jurisdiction trial court, department, or administrative agency.

**Contract:** Any case involving a dispute over an agreement between two or more parties.

**Garnishment:** Any case where, after a monetary judgment, a third party who has money or other property belonging to the defendant is required to turn over such money or property to the court.

**General Tort:** Any tort case that is not defined or is not attributable to one of the other torts.

**Habeas Corpus:** Any case designed to test the legality of the detention or imprisonment of an individual, not the question of guilt or innocence.

**Injunction/Mandamus/Other Writ:** Cases involving a written court order directed to a specific person, requiring that person to perform or refrain from performing a specific act.

**Landlord/Tenant:** Any case involving landlord/tenant disputes wherein the landlord removes a tenant and his/her property from the premises or places a lien on tenant property to repay debt.

**Medical Malpractice Tort:** Any tort case that alleges misconduct or negligence by a person in the medical profession acting in a professional capacity, such as doctors, nurses, physician's assistants, dentists, etc.

**Product Liability Tort:** Any tort case that alleges injury is caused to a person by the manufacturer or seller of an article due to a defect in, or the condition of, the article sold or an alleged breach of duty to provide suitable instructions to prevent injury.

**Real Property:** Any case involving disputes over the ownership, use, boundaries, or value of fixed land.

**Restraining Petition:** Any petition for a restraining order that does not result from a domestic altercation or is not between parties considered to be in a domestic relationship.

**Other General Civil:** Any case in which a plaintiff requests the enforcement or protection of a right or the redress or prevention of a wrong, but does not fit into one of the other defined case categories.

### Domestic Relations Cases

**Adoption:** Cases involving a request for the establishment of a new, permanent relationship of parent and child between persons not so biologically related.

**Dissolution/Divorce/Separate Maintenance:** Any case involving the dissolution of a marriage or the establishment of alimony or separate maintenance.

**Family Violence Petition:** Any case in which a protective order from a family member or domestic partner is requested.

**Paternity/Legitimation:** Cases involving the establishment of the identity and/or responsibilities of the father of a minor child or the determination of biological offspring.

**Support – IV-D:** Cases filed by the Georgia Department of Human Services to request maintenance of a minor child by a person who is required, under Title IV-D of the Social Security Act of 1973, to provide such maintenance.

**Support – Private (non-IV-D):** Cases filed to request maintenance of a parent/guardian or a minor child by a person who is required by law, but who is not under the auspices of Title IV-D of the Social Security Act of 1973, to provide such maintenance.

**Other Domestic Relations:** Domestic relations cases, including name changes, that do not adequately fit into any of the other case types.

### Post-Judgment

**Contempt:** Any case alleging failure to comply with a previously existing court order.

**Modification:** Any case seeking to change the terms of a previously existing court order.

**Other/Administrative:** Any case with post-judgment activity that does not fit into contempt or modification categories.

**Please note:** This form is for statistical purposes only. It shall have no legal effect in the case. The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or court rules. Information on this form cannot be entered into evidence.

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CARL DAVID MCBRIDE, | : | |
| | : | |
| Plaintiff, | : | Civil Action File |
| | : | 24A03377 |
| | : | No. _____ |
| vs. | : | |
| | : | |
| | : | |
| PATRICK LABAT, individually; | : | |
| JOHN JACKSON, individually; CATHELENE | : | |
| "TINA" ROBINSON, individually; CHYVAUN | : | |
| FERGUSON, individually; MICHAEL | : | |
| LANIER, individually; CATRINA PARHAM, | : | |
| individually; DEXTER DOUGLAS, | : | |
| individually; EMANI HUNTER, individually; | : | |
| MARY CONKLIN, individually; OMOBOLA | : | |
| ADEPOJU, individually; SHANELL YOUNG, | : | |
| individually; SONYA LYMON, individually; | : | |
| TRACY AARON, individually; BYRON | : | |
| LECOUNTE, individually; DERRICK | : | |
| SINGLETON, individually; ADAM LEE III, | : | |
| individually; JEFFREY MOFFETT, individually; | : | |
| DEXTER JENKINS, individually; ADRIENNE | : | |
| CHRISTOPHER a/k/a ADRIANA | : | |
| CHRISTOPHER, individually; LUCINDA | : | |
| STROZIER, individually; JAMARL JOHNSON, | : | |
| individually; YOLANDA WINFREY, individually; | : | |
| MAURICE ARNOLD, individually; LURA | : | |
| BAXTER, individually; TYNA TAYLOR, | : | |
| individually; TERRI GLANTON, individually; and | : | |
| YASHI YOUMANS, individually; | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, by and through counsel, files his Complaint for damages alleging as follows:

**STATE COURT OF
DEKALB COUNTY, GA.
6/7/2024 5:31 PM
E-FILED
BY: Monica Gay**

1. Plaintiff brings this civil action pursuant when Defendants[1], acting under color of law and without proper authority to do so, unlawfully detained and falsely imprisoned Plaintiff Carl McBride for months after a Fulton County Superior Court judge had ordered his release "instanter."

## The Parties

2. Plaintiff Carl David McBride is a citizen and resident of Walker County, Texas.

3. Defendant Sheriff Patrick Labat ("Labat") is a citizen and resident of Fulton County, Georgia.

4. Defendant Labat is sued only in his individual capacity.

5. Defendant John Jackson ("Jackson") is a citizen and resident of Fulton County, Georgia.

6. Defendant Jackson is sued only in his individual capacity.

7. Defendant Cathelene "Tina" Robinson ("Robinson") is a citizen and resident of Dekalb County, Georgia.

8. Defendant Robinson is sued only in her individual capacity.

9. Defendant Chyvaun Ferguson ("Ferguson") is a citizen and resident of Fulton County, Georgia.

10. Defendant Ferguson is sued only in her individual capacity.

11. Defendant Michael Lanier ("Lanier") is a citizen and resident of Gwinnett County, Georgia.

12. Defendant Lanier is sued only in his individual capacity.

13. Defendant Catrina Parham ("Parham") is a citizen and resident of Clayton County, Georgia.

---

[1] Prior to filing this lawsuit, Plaintiff's counsel communicated with the County Attorney's office for Fulton County (as well as sending open records requests) requesting that that Office identify the individuals who specifically were responsible for transmitting Dismissal and Release Orders and processing those orders so that only those individuals would be Defendants. The County Attorney's office declined to provide that information. As a result, Plaintiff had no choice but to file the lawsuit including all these Defendants.

14. Defendant Parham is sued only in her individual capacity.

15. Defendant Dexter Douglas ("Douglas") is a citizen and resident of Clayton County, Georgia.

16. Defendant Douglas is sued only in his individual capacity.

17. Defendant Emani Hunter ("Hunter") is a citizen and resident of Fulton County, Georgia.

18. Defendant Hunter is sued in her individual capacity.

19. Defendant Mary Conklin ("Conklin") is a citizen and resident of Dekalb County, Georgia.

20. Defendant Conklin is sued only in her individual capacity.

21. Defendant Omobola Adepoju ("Adepoju") is a citizen and resident of Fulton County, Georgia.

22. Defendant Adepoju is sued only in her individual capacity.

23. Defendant Shanell Young ("Young") is a citizen and resident of Fulton County, Georgia.

24. Defendant Young is sued only in her individual capacity.

25. Defendant Sonya Lymon ("Lymon") is a citizen and resident of Clayton County, Georgia.

26. Defendant Lymon is sued only in her individual capacity.

27. Defendant Tracy Aaron ("Aaron") is a citizen and resident of Dekalb County, Georgia.

28. Defendant Aaron is sued only in her individual capacity.

29. Defendant Byron LeCounte ("LeCounte") is a citizen and resident of Newton County, Georgia.

30. Defendant LeCounte is sued only in his individual capacity.

31. Defendant Derrick Singleton ("Singleton") is a citizen and resident of Fayette County, Georgia.

32. Defendant Singleton is sued only in his individual capacity.

33. Defendant Adam Lee III ("Lee") is a citizen and resident of Gwinnett County, Georgia.

34. Defendant Lee is sued only in his individual capacity.

35. Defendant Jeffrey Moffett ("Moffett") is a citizen and resident of Clayton County, Georgia.

36. Defendant Moffett is sued only in his individual capacity.

37. Defendant Dexter Jenkins ("Jenkins") is a citizen and resident of Clayton County, Georgia.

38. Defendant Jenkins is sued only in his individual capacity.

39. Defendant Adrienne Christopher a/k/a Adriana Christopher ("Christopher") is a citizen and resident of Carroll County, Georgia.

40. Defendant Christopher is sued only in her individual capacity.

41. Defendant Lucinda Strozier ("Strozier") is a citizen and resident of Henry County, Georgia.

42. Defendant Strozier is sued only in her individual capacity.

43. Defendant Jamarl Johnson ("Johnson") is a citizen and resident of Henry County, Georgia.

44. Defendant Johnson is sued only in his individual capacity.

45. Defendant Yolanda Winfrey ("Winfrey") is a citizen and resident of Cobb County, Georgia.

46. Defendant Winfrey is sued only in her individual capacity.

47. Defendant Maurice Arnold ("Arnold") is a citizen and resident of Douglas County, Georgia.

48. Defendant Arnold is sued only in his individual capacity.

49. Defendant Lura Baxter ("Baxter") is a citizen and resident of Henry County, Georgia.

50. Defendant Baxter is sued only in her individual capacity.

51. Defendant Tyna Taylor ("Taylor") is a citizen and resident of Fulton County, Georgia.

52. Defendant Taylor is sued only in her individual capacity.

53. Defendant Terri Glanton ("Glanton") is a citizen and resident of Douglas County, Georgia.

54. Defendant Glanton is sued only in her individual capacity.

55. Defendant Yashi Youmans ("Youmans") is a citizen and resident of Gwinnett County, Georgia.

56. Defendant Youmans is sued only in his individual capacity.

## Jurisdiction & Venue

57. This Court has subject matter jurisdiction over the claims alleged in this Complaint.

58. Defendant Labat is subject to the jurisdiction of this Court.

59. Defendant Jackson is subject to the jurisdiction of this Court.

60. Defendant Robinson is subject to the jurisdiction of this Court.

61. Defendant Ferguson is subject to the jurisdiction of this Court.

62. Defendant Lanier is subject to the jurisdiction of this Court.

63. Defendant Parham is subject to the jurisdiction of this Court.

64. Defendant Douglas is subject to the jurisdiction of this Court.

65. Defendant Hunter is subject to the jurisdiction of this Court.

66. Defendant Conklin is subject to the jurisdiction of this Court.

67. Defendant Adepoju is subject to the jurisdiction of this Court.

68. Defendant Young is subject to the jurisdiction of this Court.

69. Defendant Lymon is subject to the jurisdiction of this Court.

70. Defendant Aaron is subject to the jurisdiction of this Court.

71. Defendant LeCounte is subject to the jurisdiction of this Court.

72. Defendant Singleton is subject to the jurisdiction of this Court.

73. Defendant Lee is subject to the jurisdiction of this Court.

74. Defendant Moffett is subject to the jurisdiction of this Court.

75. Defendant Jenkins is subject to the jurisdiction of this Court.

76. Defendant Christopher is subject to the jurisdiction of this Court.

77. Defendant Strozier is subject to the jurisdiction of this Court.

78. Defendant Johnson is subject to the jurisdiction of this Court.

79. Defendant Winfrey is subject to the jurisdiction of this Court.

80. Defendant Arnold is subject to the jurisdiction of this Court.

81. Defendant Baxter is subject to the jurisdiction of this Court.

82. Defendant Taylor is subject to the jurisdiction of this Court.

83. Defendant Glanton is subject to the jurisdiction of this Court.

84. Defendant Youmans is subject to the jurisdiction of this Court.

85. Venue is proper in this Court as one or more Defendants reside in DeKalb County, Georgia.

**Facts**

86. From March 1, 2022, through July 31, 2022, Defendant Labat was Sheriff of Fulton County, Georgia.

87. From March 1, 2022, through July 31, 2022, Defendant Jackson was Colonel and Chief Jailer of Fulton County, Georgia.

88. From March 1, 2022, through July 31, 2022, Defendant Robinson was Clerk of the Superior and Magistrate courts ("Clerk") of Fulton County, Georgia.

89. From March 1, 2022, through July 31, 2022, Defendant Ferguson was Chief of Courts Bureau of Fulton County, Georgia.

90. From March 1, 2022, through July 31, 2022, Defendant Lanier was Chief Deputy Clerk of Fulton County, Georgia Superior Court.

91. From March 1, 2022, through July 31, 2022, Defendant Parham was an employee of the Clerk of Fulton County, Georgia Superior Court.

92. From March 1, 2022, through July 31, 2022, Defendant Douglas was Assistant Chief Deputy Clerk-Criminal Division of the Clerk of Fulton County, Georgia Superior Court.

93. From March 1, 2022, through July 31, 2022, Defendant Hunter was Court Supervisor II of the Clerk of Fulton County, Georgia Superior Court.

94. From March 1, 2022, through July 31, 2022, Defendant Conklin was an employee of court of the Clerk of Fulton County, Georgia Superior Court .

95. From March 1, 2022, through July 31, 2022, Defendant Adepoju was an employee of the Clerk of Fulton County, Georgia Superior Court.

From March 1, 2022, through July 31, 2022, Defendant Young was Court Support Supervisor II of the Clerk of Fulton County, Georgia Superior Court.

96. From March 1, 2022, through July 31, 2022, Defendant Lymon was an employee of the Clerk of Fulton County, Georgia Superior Court.

97. From March 1, 2022, through July 31, 2022, Defendant Aaron was an employee of the Clerk of Fulton County, Georgia Superior Court.

98. From March 1, 2022, through July 31, 2022, Defendant LeCounte was Lt. Colonel of Fulton County, Georgia Sheriff's Office.

99. From March 1, 2022, through July 31, 2022, Defendant Singleton was Lt. Colonel of Fulton County, Georgia Sheriff's Office.

100.    From March 1, 2022, through July 31, 2022, Defendant Lee was Lt. Colonel of Fulton County, Georgia Sheriff's Office.

101.    From March 1, 2022, through July 31, 2022, Defendant Moffett was Major of Fulton County, Georgia Sheriff's Office.

102.    From March 1, 2022, through July 31, 2022, Defendant Jenkins was Major of Fulton County, Georgia.

103.    From March 1, 2022, through July 31, 2022, Defendant Christopher was Major of Fulton County, Georgia Sheriff's Office.

104.    From March 1, 2022, through July 31, 2022, Defendant Strozier was Deputy Sheriff (Captain) of Fulton County, Georgia Sheriff's Office.

105.    From March 1, 2022, through July 31, 2022, Defendant Johnson was Deputy of Fulton County, Georgia Sheriff's Office.

106.    From March 1, 2022, through July 31, 2022, Defendant Winfrey was Deputy of Fulton County, Georgia Sheriff's Office.

107.    From March 1, 2022, through July 31, 2022, Defendant Arnold was Deputy of Fulton County, Georgia Sheriff's Office.

108.    From March 1, 2022, through July 31, 2022, Defendant Baxter was Deputy of Fulton County, Georgia Sheriff's Office.

109.    From March 1, 2022, through July 31, 2022, Defendant Taylor was Deputy of Fulton County, Georgia Sheriff's Office.

110.    From March 1, 2022, through July 31, 2022, Defendant Glanton was Deputy of Fulton County, Georgia Sheriff's Office.

111.    From March 1, 2022, through July 31, 2022, Defendant Youmans was Deputy of Fulton County, Georgi Sheriff's Office a.

**Defendants' Ministerial Duties**

112.    All Defendants are employees of either the Fulton County Sheriff's Office or the Fulton County Superior Court Clerk's Office.

113.     All Defendants, by virtue of their employment, routinely receive orders from Fulton County Superior Court judges, including orders directing individuals incarcerated in Fulton County Jail be released from custody "instanter."

114.     All Defendants must comply with and obey the orders received from Fulton County Superior Court judges.

115.     Each and every Defendant had a ministerial duty to comply with judicial orders relating to the release of incarcerated persons.

116.     On March 2, 2022, through July 31, 2022, the following Defendants were employees of the Clerk of the Fulton County, Georgia Superior Court Clerk:

    a.   Robinson

    b.   Ferguson

    c.   Lanier

    d.   Parnham

    e.   Douglas

    f.   Hunter

    g.   Conklin

    h.   Adepoju

    i.   Young

    j.   Lymon

    k.   Aaron (Collectively the "Clerk's Office Defendants").

117.     The Clerk's Office Defendants do not have the discretion to ignore the orders of the Fulton County Superior Court judges.

118.     The Clerk's Office Defendants not only must comply with the orders of the Fulton County Superior Court judges, they also must promptly transmit the orders to other governmental entities, including the Fulton County Sheriff's Office and the Fulton County jail.

119.     The Clerk's Office Defendants do not have the discretion to fail to transmit the orders of the Fulton County Superior Court judges to the other governmental entities to which the orders may apply.

120.     On March 2, 2022, through July 31, 2022, the following Defendants were employees of the Fulton County Sheriff's Office:

     a.   Labat

     b.   Jackson

     c.   LeCounte

     d.   Singleton

     e.   Lee

     f.   Moffett

     g.   Jenkins

     h.   Christopher

     i.   Strozier

     j.   Johnson

     k.   Winfrey

     l.   Arnold

     m.   Baxter

     n.   Taylor

     o.   Glanton

p. Youmans (collectively the "Sheriff's Office Defendants").

121.　The Sheriff's Office Defendants do not have the discretion to fail to comply with, obey and execute the orders of the Fulton County Superior Court judges.

122.　The act of complying with/obeying/executing an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is simple.

123.　The act of complying with/obeying/executing an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is absolute.

124.　The act of complying with/obeying/executing an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is definite.

125.　The act of complying with/obeying/executing an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" requires the execution of a specific duty: the immediate release from detention in the Fulton County Jail of the person identified in the order.

126.　The act of complying with/obeying/executing an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" does not require any personal deliberation.

127.　The act of complying with/obeying/executing with an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" does not require the exercise of any personal judgment.

128.　The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is simple.

129.　The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is absolute.

130. The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" is definite.

131. The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" requires the execution of a specific duty: simply transmitting the order to the Fulton County Jail.

132. The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" does not require any personal deliberation.

133. The act of transmitting an order of a Fulton County Superior Court judge to release a person from the Fulton County Jail "instanter" does not require the exercise of any personal judgment.

### Defendant Labat's Duties

134. Defendant Labat is an individual who was, at all times relevant, Sheriff of Fulton County, Georgia.

135. Defendant Labat assumed the office of Sheriff of Fulton County, Georgia on January 1, 2021.

136. From March 1, 2022, through July 31, 2022, Defendant Labat maintained control over the Fulton County Jail.

137. As Sheriff, Defendant Labat was responsible for overseeing all procedures and operations of the Fulton County Jail.

138. As Sheriff, Defendant Labat was responsible for ensuring compliance with the orders of the Fulton County Superior Court.

139. As Sheriff, Defendant Labat was responsible for training employees of his office or ensuring that employees of his office were properly trained.

140. As Sheriff, Defendant Labat was responsible for supervising all the employees of his office.

141. As Sheriff, Defendant Labat was subject to duties pursuant to O.C.G.A. § 15-16-10.

142. As Sheriff, Defendant Labat was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

143. As Sheriff, Defendant Labat's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

144. As Sheriff, Defendant Labat had the duty to enact and enforce policies that would ensure the prompt execution of all Court orders, including those that ordered the release of an individual from the Fulton County jail "instanter."

145. As Sheriff, Defendant Labat had the duty to keep a record of all persons committed to the Fulton County jail.

146. As Sheriff, Defendant Labat had the duty to maintain certain information on each person committed to the Fulton County jail including, but not limited to, the day of each person's discharge, the order under which each person is discharged, and the Court from which the order was issued.

147. As Sheriff, Defendant Labat is liable for any misconduct carried out by the deputies or the jailers at the Fulton County jail.

**The Jailers' Duties**

148. Defendant Jackson is an individual who was, at all times relevant, Colonel and Chief Jailer of the Fulton County Jail.

149. As Chief Jailer, Defendant Jackson was responsible for overseeing all jail operations, policies, and procedures.

150. As Chief Jailer, Defendant Jackson had a duty to ensure orders of the court were executed/obeyed including those ordering the release of jail inmates, "instanter."

151.    As Chief Jailer, Defendant Jackson's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

152.    Defendant LeCounte is an individual who was, at all times relevant, Lt. Colonel for Fulton County Sheriff's Office.

153.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant LeCounte was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

154.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant LeCounte had a duty to ensure orders of the court were executed/obeyed.

155.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant LeCounte's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

156.    Defendant Singleton is an individual who was, at all times relevant, Lt. Colonel for Fulton County Sheriff's Office.

157.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Singleton was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

158.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Singleton had a duty to ensure orders of the court were executed/obeyed.

159.    As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Singleton's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

160.    Defendant Lee is an individual who was, at all times relevant, Lt. Colonel for Fulton County Sheriff's Office.

161. As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Lee was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

162. As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Lee had a duty to ensure orders of the court were executed/obeyed.

163. As Lt. Colonel of the Fulton County Sheriff's Office, Defendant Lee's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

164. Defendant Moffett is an individual who was, at all times relevant, Major for Fulton County Sheriff's Office.

165. As Major of the Fulton County Sheriff's Office, Defendant Moffett was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

166. As Major of the Fulton County Sheriff's Office, Defendant Moffett had a duty to ensure orders of the court were executed/obeyed.

167. As Major of the Fulton County Sheriff's Office, Defendant Moffett's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

168. Defendant Jenkins is an individual who was, at all times relevant, Major for Fulton County Sheriff's Office.

169. As Major of the Fulton County Sheriff's Office, Defendant Jenkins was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

170. As Major of the Fulton County Sheriff's Office, Defendant Jenkins had a duty to ensure orders of the court were executed/obeyed.

171.   As Major of the Fulton County Sheriff's Office, Defendant Jenkins' duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

172.   Defendant Christopher is an individual who was, at all times relevant, Major for Fulton County Sheriff's Office.

173.   As Major of the Fulton County Sheriff's Office, Defendant Christopher was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

174.   As Major of the Fulton County Sheriff's Office, Defendant Christopher had a duty to ensure orders of the court were executed/obeyed.

175.   As Major of the Fulton County Sheriff's Office, Defendant Christopher's duty to ensure orders of the court were executed/obeyed was ministerial, and not discretionary.

176.   Defendant Strozier is an individual who was, at all times relevant, a Deputy Sheriff (Captain) ("Deputy") of the Fulton County Sheriff's Office.

177.    As Deputy, Defendant Strozier was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

178.   As Deputy, Defendant Strozier was subject to duties pursuant to O.C.G.A. § 15-16-10.

179.   As Deputy, Defendant Strozier was required "[t]o execute . . .  orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

180.   As Deputy, Defendant Strozier's duties "[t]o execute . . .  orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

181.   Defendant Johnson is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

182.    As Deputy, Defendant Johnson was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

183.    As Deputy, Defendant Johnson was subject to duties pursuant to O.C.G.A. § 15-16-10.

184.    As Deputy, Defendant Johnson was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

185.    As Deputy, Defendant Johnson's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

186.    Defendant Winfrey is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

187.    As Deputy, Defendant Winfrey was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

188.    As Deputy, Defendant Winfrey was subject to duties pursuant to O.C.G.A. § 15-16-10.

189.    As Deputy, Defendant Winfrey was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

190.    As Deputy, Defendant Winfrey's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

191.    Defendant Arnold is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

192.    As Deputy, Defendant Arnold was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

193.    As Deputy, Defendant Arnold was subject to duties pursuant to O.C.G.A. § 15-16-10.

194.    As Deputy, Defendant Arnold was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

195.    As Deputy, Defendant Arnold's duties "[t]o execute . . .   orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

196.    Defendant Baxter is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

197.     As Deputy, Defendant Baxter was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

198.    As Deputy, Defendant Baxter was subject to duties pursuant to O.C.G.A. § 15-16-10.

199.    As Deputy, Defendant Baxter was required "[t]o execute . . .   orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

200.    As Deputy, Defendant Baxter's duties "[t]o execute . . .   orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

201.    Defendant Taylor is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

202.     As Deputy, Defendant Taylor was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

203.    As Deputy, Defendant Taylor was subject to duties pursuant to O.C.G.A. § 15-16-10.

204.    As Deputy, Defendant Taylor was required "[t]o execute . . .   orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

205.    As Deputy, Defendant Taylor's duties "[t]o execute . . .   orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

206.    Defendant Glanton is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

207.    As Deputy, Defendant Glanton was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

208.    As Deputy, Defendant Glanton was subject to duties pursuant to O.C.G.A. § 15-16-10.

209.    As Deputy, Defendant Glanton was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

210.    As Deputy, Defendant Glanton's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

211.    Defendant Youmans is an individual who was, at all times relevant, a Deputy of the Fulton County Sheriff's Office.

212.    As Deputy, Defendant Youmans was responsible for various aspects related to the day-to-day oversight of the Fulton County jail operations, policies, and procedures.

213.    As Deputy, Defendant Youmans was subject to duties pursuant to O.C.G.A. § 15-16-10.

214.    As Deputy, Defendant Youmans was required "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

215.    As Deputy, Defendant Youman's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

**Duties of Defendant Robinson, Defendant Ferguson and Defendant Lanier**

216.    Defendant Robinson is an individual who was, at all times relevant, Fulton County Clerk of the Superior and Magistrate courts.

217.    As Clerk of Fulton County Superior Court, Defendant Robinson was subject to duties pursuant to O.C.G.A. § 15-16-10(b).

218.    As Clerk of Fulton County Superior Court, Georgia law required Defendant Robinson "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" pursuant to O.C.G.A. § 15-16-10(a)(1).

219.    As Clerk of Fulton County Superior Court, Defendant Robinson's duties "[t]o execute . . . orders of the courts . . . of competent authority . . . with due diligence" were ministerial, and not discretionary.

220.    As Clerk of Fulton County Superior Court, Defendant Robinson was responsible for overseeing all Superior Court operations, policies, and procedures.

221.    As Clerk of Fulton County Superior Court, Defendant Robinson had the duty to establish policies that would see that staff executed/obeyed Court orders without undue delay.

222.    As Clerk of Fulton County Superior Court, Defendant Robinson had the duty to enforce policies that would see that staff executed/obeyed Court orders without undue delay.

223.    As Clerk of Fulton County Superior Court, had the duty to train Clerk's office personnel/officers of court to ensure that Court orders directed to other county/state officers/officials were transmitted to the appropriate officer/official without undue delay.

224.    As Clerk of Fulton County Superior Court, had the duty to supervise Clerk's office personnel/officers of court to ensure that Court orders directed to other county/state officers/officials were transmitted to the appropriate officer/official without undue delay.

225.    Defendant Ferguson was Chief of Courts Bureau for the Fulton County Superior Court Clerk's office.

226.    As Chief of Courts Bureau, Defendant Ferguson was responsible for ensuring that Fulton County Superior Court orders were transmitted timely so that the persons/entities to whom the orders applied could comply with, obey and execute the order.

227. Defendant Ferguson's duty to transmit Fulton County Superior Court orders was ministerial.

228. Defendant Ferguson did not have the discretion to fail to transmit Fulton County Superior Court orders to the appropriate person/entity, including the Fulton County Jail.

229. As Chief of Courts Bureau, Defendant Ferguson had the duty to implement policies that would see that staff executed/obeyed Court orders without undue delay.

230. As Chief of Courts Bureau, Defendant Ferguson had the duty to train personnel/officers of court to ensure that the Clerk's Office transmitted Court orders directed to other county/state officers/officials to the appropriate officer/official without undue delay.

231. As Chief of Courts Bureau, Defendant Ferguson had the duty to supervise personnel/officers of court to ensure that the Clerk's Office transmitted Court orders directed to other county/state officers/officials to the appropriate officer/official without undue delay.

232. Defendant Lanier was Chief Deputy Clerk for the Fulton County Superior Court Clerk's office.

233. As Chief Deputy Clerk, Defendant Lanier was responsible for ensuring that the Clerk's Office transmitted Fulton County Superior Court orders timely so that the persons/entities to whom the orders applied could comply with, execute and obey the order.

234. Defendant Lanier's duty to transmit Fulton County Superior Court orders was ministerial.

235. Defendant Lanier did not have the discretion to fail to transmit Fulton County Superior Court orders to the appropriate person/entity.

236. As Chief Deputy Clerk, Defendant Lanier had the duty to implement policies that would see that staff executed/obeyed Court orders without undue delay.

237. As Chief Deputy Clerk, Defendant Lanier had the duty to train personnel/officers of court to ensure that the Clerk's Office transmitted Court orders directed to other county/state officers/officials to the appropriate officer/official without undue delay.

238. As Chief Deputy Clerk, Defendant Lanier had the duty to supervise personnel/officers of court to ensure that the Clerk's Office transmitted Court orders directed to other county/state officers/officials to the appropriate officer/official without undue delay.

## Non-Supervisory Clerk's Office Defendants' Duties

239. At all times alleged, Defendant Parham was an employee of the Fulton County Superior Court Clerk's Office.

240. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Parham was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

241. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Parham had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity in a timely manner.

242. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Parham's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

243. At all times alleged, Defendant Douglas was Assistant Chief Deputy Clerk-Criminal Division of the Fulton County Superior Court of the Fulton County Superior Court Clerk's Office.

244. At all times alleged, Defendant Douglas was an employee of the Fulton County Superior Court Clerk's Office.

245. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Douglas was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

246. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Douglas had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

247. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Douglas's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

248. At all times alleged, Defendant Hunter was Court Supervisor II at Fulton County Superior Court of the Fulton County Superior Court Clerk's Office.

249. At all times alleged, Defendant Hunter was an employee of the Fulton County Superior Court Clerk's Office.

250. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Hunter was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

251. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Hunter had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

252. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Hunter's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

253.    At all times alleged, Defendant Conklin was an employee of the Fulton County Superior Court Clerk's Office.

254.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Conklin was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

255.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Conklin had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

256.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Conklin's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

257.    At all times alleged, Defendant Adepoju was an employee of the Fulton County Superior Court Clerk's Office.

258.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Adepoju was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

259.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Adepoju had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

260.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Adepoju's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

261.    At all times alleged, Defendant Young was Court Support Supervisor II at Fulton County Superior Court of the Fulton County Superior Court Clerk's Office.

262.    At all times alleged, Defendant Young was an employee of the Fulton County Superior Court Clerk's Office.

263.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Young was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

264.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Young had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

265.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Young's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

266.    At all times alleged, Defendant Lymon was an employee of the Fulton County Superior Court Clerk's Office.

267.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Lymon was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

268.    As an employee of the Fulton County Superior Court Clerk's Office, Defendant Lymon had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

269. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Lymon's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

270. At all times alleged, Defendant Aaron was an employee of the Fulton County Superior Court Clerk's Office.

271. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Aaron was responsible for various aspects related to the day-to-day oversight of the Superior Court operations, policies, and procedures.

272. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Lymon had a duty to ensure the Clerk's Office transmitted orders of the court to the appropriate person/entity.

273. As an employee of the Fulton County Superior Court Clerk's Office, Defendant Lymon's duty to ensure the Clerk's Office transmitted orders of the court was ministerial, and not discretionary.

### Plaintiff's Incarceration and Confinement

274. On or about June 12, 2021, College Park Police Department arrested Plaintiff.

275. Plaintiff was incarcerated (or "committed to") within the Fulton County Jail beginning June 12, 2021.

276. On March 2, 2022, a Fulton County Superior Court judge dismissed all charges against Plaintiff. *See* Exhibit 1, Dismissal and Release Order.

277. The Dismissal and Release Order was entered and filed within the Superior Court of Fulton County on March 2, 2022.

278. When the Dismissal and Release Order was entered, Plaintiff did not have any other outstanding warrants from any other jurisdiction.

279. When the Dismissal and Release Order was entered, Plaintiff did not have any other outstanding holds or other legal detention orders from any other jurisdiction.

280. When the Dismissal and Release Order entered, no Defendant or any other law enforcement agency anywhere in the Country had any legal authority to continue to detain Plaintiff.

281. When the Dismissal and Release Order entered, no Defendant or any other law enforcement agency anywhere in the Country had any legal authority to continue to deprive Plaintiff of his personal liberty.

282. The Judge's signing and entry of the Dismissal and Release Order entitled Plaintiff, as a matter of law, to be released from custody without any further delay.

283. The Dismissal and Release Order stated that Plaintiff "be released from the Fulton County Jail instanter."

284. "Instanter" means immediately; instantly; without delay.

285. All Defendants, by virtue of their employment, experience, education and training knew that "instanter" means immediately; instantly; without delay.

286. If, on March 2, 2022, any Defendant did not know that "instanter" meant immediately; instantly; without delay; then that lack of knowledge is due to that Defendant's superiors' failure to train or supervise.

287. Despite his entitlement to immediate release on March 2, 2022, Plaintiff remained confined by the Fulton County Sheriff Defendants through July 27, 2022.

288.   During the time of Plaintiff's incarceration, the Fulton County Jail experienced violence, overcrowding, crumbling walls, flooding, and unsanitary conditions that were of such magnitude the conditions drew national attention.

289.   During the time of Plaintiff's incarceration, funds provided to the Fulton County Jail to provide for the health, safety, and general welfare of those incarcerated there instead were spent on vehicle purchases, gift cards for staff, conferences, and staff entertainment.

290.   During the time of Plaintiff's incarceration, inmate on inmate violence at Fulton County Jail reached the highest level recorded.

291.   Plaintiff, who the Fulton County Superior Court had ordered released, was forced to suffer from and endure these conditions and constant fear for his safety because of Defendants.

292.   Plaintiff remained falsely imprisoned for 148 days after the Fulton County Superior Court had ordered his release instanter.

### Count One – State Law False Imprisonment Pursuant to O.C.G.A. § 51-7-20
### (All Defendants – Breach of Ministerial Duty)

293.   This Count is alleged against all Defendants under O.C.G.A. § 51-7-20 for the false imprisonment of Plaintiff.

294.    O.C.G.A. § 51-7-20 states, "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty."

295.   This count is alleged as a breach of ministerial duties against all Defendants.

296.    A ministerial act is, "one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty" (*Hill v. Jackson,* 336 Ga. App. 679 (Court of Appeals of Georgia, 2016)).

297.   Each and every Defendant had the duty under Georgia law to release any person committed to or incarcerated in the Fulton County Jail upon receiving notice that any prosecution against an

inmate has ceased, that charges have been dismissed, or that a *nolle prosequi* order has been entered and the Court had ordered the inmate released instanter.

298. Defendants further had (and have) a duty to release immediately, without any delay, all persons committed in the Fulton County Jail for whom any Court of competent jurisdiction, including the Fulton County Superior Court, orders the person's release instanter.

299. The lawful detention of Plaintiff ended on March 2, 2022, following the dismissal of the criminal charges against Plaintiff.

300. The lawful detention of Plaintiff ended on March 2, 2022, when the Fulton County Superior Court ordered Plaintiff's release "instanter."

301. Despite a lawful court order of release, Defendants failed to comply with the Court order and did not release Plaintiff from detention until July 27, 2022.

302. No Defendant had the discretion to not comply with the March 2, 2022, Fulton County Superior Court Order.

303. No Defendant had the discretion to continue to confine Plaintiff in the Fulton County Jail or at any other detention facility.

304. From March 2, 2022, through July 27, 2022, all Defendants deprived Plaintiff of his personal liberty.

305. From March 2, 2022, through July 27, 2022, all Defendants deprived Plaintiff of his freedom.

306. From March 2, 2022, through July 27, 2022, all Defendants unlawfully detained Plaintiff.

307. Each and every Defendant therefore is liable for false imprisonment.

308. As a result of Plaintiff's continued imprisonment after the Fulton County Superior Court ordered his release, he suffered a loss of freedom, personal liberty, and bodily autonomy, leading to emotional distress as well as physical injuries.

309. Defendants' breach of the ministerial duty to comply with the Fulton County Superior Court's order to release him from custody instanter was a proximate cause of Plaintiff's damages.

### Count Two – Defendant Labat's Liability for Misconduct of Jailers Pursuant to O.C.G.A. § 15-16-24

310. At all times alleged, Defendant Labat was the Sheriff of Fulton County.

311. As Sheriff, Defendant Labat was responsible for overseeing all procedures and operations of the Fulton County Jail.

312. As Sheriff, Defendant Labat is liable for the misconduct of the jailers at Fulton County jail, including all named Defendants in this action identified as jailers:

    a. Jackson;

    b. LeCounte;

    c. Singleton;

    d. Lee;

    e. Moffett;

    f. Jenkins;

    g. Christopher;

    h. Strozier;

    i. Johnson;

    j. Winfrey;

    k. Arnold;

    l. Baxter;

m. Taylor;

n. Glanton; and

o. Youmans (collectively "the Jailer Defendants").

313.    The Jailer Defendants' conduct of failing to comply with the Fulton County Superior Court's order to release Plaintiff instanter resulted in the over-detention and false imprisonment of Plaintiff.

314.    The Jailer Defendants owed a duty to avoid over-detention, false imprisonment and other harms to persons in his custody, including Plaintiff.

315.    The Jailer Defendants had the ministerial duty to execute a court order within their purview, as set forth in the order.

316.    The Jailer Defendants breached these duties by ignoring the Fulton County Superior Court's order to release Plaintiff from custody instanter.

317.    The risks and harms that the Jailer Defendants caused Plaintiff by the Jailer Defendants' failure to comply with the Fulton County Superior Court's order were within the scope of protection afforded by the duties they owed Plaintiff.

318.    As a result of the Jailer Defendants' acts and omissions, Plaintiff suffered actual and foreseeable harm.

319.    While committing the misconduct alleged in the preceding paragraphs, the Jailer Defendants, under the employment and agency of Defendant Labat in his capacity as Sheriff, were acting within the scope of their employment with Defendant Labat.

320.    Defendant Labat failed to exercise ordinary care and diligence to prevent the false imprisonment of Plaintiff and the deprivation of Plaintiff's freedom and liberty through the Jailer Defendants' failure to comply with the Fulton County Superior Court's order.

321. Defendant Labat's failure to exercise ordinary care and diligence to prevent the deprivation of Plaintiff's freedom and liberty through false imprisonment was a proximate cause of damages to Plaintiff.

322. Pursuant to O.C.G.A. § 15-16-24, Defendant Labat is liable for the misconduct of the Jailer Defendants as alleged in this Count of the Complaint.

### Count Three – 42 U.S.C. § 1983 Deprivation of Civil Rights Under Color of Law: *Monell* Liability of Defendants Labat and Jackson

323. At all times alleged, Defendant Labat was the Sheriff of Fulton County.

324. At all times alleged, Defendant Labat was acting under color of law.

325. As Sheriff, Defendant Labat was responsible for overseeing all procedures and operations of the Fulton County Jail.

326. As Sheriff, Defendant Labat had the non-delegable duty to establish policies to ensure that persons committed to Fulton County jail did not suffer violations of rights afforded to them by the United States Constitution, including the Fourteenth Amendment.

327. Defendant Labat failed to formulate, implement or execute any policy to ensure that Fulton County Jail staff complied with Court orders.

328. Defendant Labat failed to formulate, implement or execute any policy to ensure that Fulton County jail staff executed/obeyed Court orders releasing persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

329. Defendant Labat failed to formulate, implement or execute any policy to ensure that Fulton County jail staff executed/obeyed Court orders releasing persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

330. In the alternative, should such policy exist, Defendant Labat failed to supervise the Fulton County Jail staff to ensure that the jail staff executed/obeyed Court orders.

331. In the alternative, should such policy exist, Defendant Labat failed to supervise the Fulton County Jail staff to ensure that the jail staff complied with Court orders commanding the release persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

332. Defendant Labat knew that over-detention and false imprisonment of persons committed to Fulton County Jail and the failure to obey Court orders were chronic problems that had existed since at least 2013.

333. Defendant Labat knew that because the over-detention and false imprisonment of individuals occurred at Fulton County Jail, he, as Sheriff, needed to require more extensive and thorough training of jail personnel, including all Jailer Defendants.

334. Despite Defendant Labat's knowledge of over-detention and false imprisonment, and the jail staff's failure to obey Court orders, Defendant Labat failed to take any action whatsoever to train Fulton County Jail staff, including all Jailer Defendants.

335. Despite Defendant Labat's knowledge of over-detention and false imprisonment at Fulton County Jail, and the jail staff's failure to obey Court orders, he failed to take any corrective action whatsoever to alleviate the problem.

336. Defendant Labat's acts/omissions, as alleged, were a proximate cause of damages to Plaintiff.

337. At all times alleged, Defendant Jackson was the Chief Jailer of Fulton County Jail.

338. At all times alleged, Defendant Jackson was acting under color of law.

339. As Chief Jailer, Defendant Jackson was responsible for overseeing all jail operations, policies, and procedures.

340.    As Chief Jailer, Defendant Jackson had the duty to establish policies to ensure that persons committed to Fulton County jail did not suffer violations of rights afforded to them by the United States Constitution, including the Fourteenth Amendment.

341.    Defendant Jackson failed to formulate, implement or execute any policy that would ensure that Fulton County jail staff executed/obeyed Court orders releasing persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

342.    Defendant Jackson failed to formulate, implement or execute any policy that would ensure that Fulton County jail staff complied with Court orders to release persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

343.    In the alternative, should such policy exist, Defendant Jackson failed to supervise the Fulton County jail staff to ensure that the jail staff executed/obeyed Court orders releasing persons from confinement at Fulton County jail in accordance with the orders' directives, e.g., instanter.

344.    Defendant Jackson knew that over-detention and false imprisonment of persons committed to Fulton County Jail and failure to obey Court orders were chronic problems that had existed since at least 2013.

345.    Defendant Jackson knew that because over-detention, false imprisonment and the failure to obey court orders problems existed at Fulton County Jail, he should require and provide more extensive and thorough training of jail personnel, including all Jailer Defendants.

346.    Despite Defendant Jackson's knowledge of over-detention, false imprisonment and failure to obey court orders, he failed to take any action whatsoever to train Fulton County Jail staff, including all Jailer Defendants.

347.  Defendant Jackson knew that because the over-detention, false imprisonment and failure to obey court orders problems existed at Fulton County Jail, he should require and provide more extensive and thorough supervision of jail personnel, including all Jailer Defendants.

348.  Despite Defendant Jackson's knowledge of over-detention and false imprisonment, he failed to take any action whatsoever to supervise Fulton County Jail staff, including all Jailer Defendants.

349.  Despite Defendant Jackson's knowledge of over-detention and false imprisonment, he failed to take any corrective action whatsoever to alleviate the problem.

350.  Defendant Jackson's acts/omissions, as alleged, was a proximate cause of damages to Plaintiff.

351.  The failures of Defendant Labat and Defendant Jackson to implement policies, practices, and customs necessary to protect the Constitutional rights of person committed to Fulton County Jail, employees and agents routinely failed to obey Court orders and failed to release persons who are subject to release.

352.  The widespread practice of Fulton County Jail personnel ignoring court orders was so well established that it constituted the *de facto* policy of Defendant Labat.

353.  The widespread practice of Fulton County Jail personnel ignoring court orders was so well settled that it constituted the *de facto* policy of Defendant Jackson.

354.  The policies, practices, and customs set forth above were the driving force behind the constitutional violation that Plaintiff suffered.

**Count Four – 42 U.S.C. § 1983 Deprivation of Civil Rights Under Color of Law**
***Monell* and Failure to Train/Supervise by Defendant Robinson, Defendant Ferguson and Defendant Lanier**

355. At all times alleged, Defendant Robinson was the Clerk of the Superior and Magistrate courts of Fulton County.

356. At all times alleged, Defendant Robinson was acting under color of law.

357. As the Clerk, Defendant Robinson was responsible for establishing, formulating, implementing and executing the policies, procedures and operations of the Fulton County Superior Court Clerk's Office.

358. As the Clerk, Defendant Robinson had the duty to establish, formulate, implement and execute policies to ensure that Court orders releasing individuals from incarceration were transmitted to the Fulton County jail.

359. Defendant Robinson failed to establish, formulate, implement or execute any policy that would ensure that Fulton County Superior Court Clerk's Office transmitted Court such orders to the Fulton County Jail.

360. In the alternative, should such policy exist, Defendant Robinson failed to supervise the Fulton County Superior Court Clerk's staff to ensure that the staff transmitted Court orders to the Fulton County Jail.

361. Defendant Robinson knew that the false imprisonment and over-detention of persons committed to Fulton County Jail were chronic problems that had existed since at least 2013.

362. Defendant Robinson knew that because false imprisonment and over-detention problems existed at Fulton County Jail, more extensive and thorough training of Superior Court Clerk's Office staff, including all Clerk's Office Defendants was necessary.

363. Despite Defendant Robinson's knowledge of false imprisonment and over-detention she failed to take any action whatsoever to train Fulton County Superior Court Clerk's staff.

364.  Defendant Robinson knew that because over-detention and false imprisonment problems existed at Fulton County Jail for years, more extensive and thorough supervision of Clerk's office personnel regarding the timely transmittal of Court Orders to the jail was necessary.

365.  Despite Defendant Robinson's knowledge of over-detention and false imprisonment at Fulton County Jail and the Clerk's staff's failure to transmit court orders of release to Fulton County Jail, she failed to take any action whatsoever to supervise the Clerk's Office staff regarding the transmittal of Court Orders to the Fulton County Jail.

366.  Despite Defendant Robinson's knowledge of false imprisonment and over-detention at Fulton County Jail and the Clerk's staff's failure to transmit court orders, she failed to take any corrective action whatsoever to alleviate the problem.

367.  The failures of Defendant Robinson to implement policies, practices, and customs necessary to ensure the prompt transmittal of Court Orders to the Fulton County Jail, Clerk's Office personnel routinely failed to transmit Court orders to the Fulton County Jail resulting in the continued, unlawful imprisonment of individuals who the Court had ordered released.

368.  The above-described widespread practice of failing to transmit court orders, were so well settled as to constitute the *de facto* policy of the Clerk's office.

369.  Defendant Robinson acted with deliberate indifference regarding the failure to transmit Court orders to the Fulton County Jail, thereby effectively ratifying the failure as a policy.

370.  The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer false imprisonment, deprivation of freedom and liberty and other damages.

371.  Defendant Robinson's deliberate indifference, as alleged, was a proximate cause of damages to Plaintiff.

372.   At all times alleged, Defendant Ferguson was the Chief of Courts Bureau for the Clerk of the Superior and Magistrate courts of Fulton County.

373.   At all times alleged, Defendant Ferguson was acting under color of law.

374.   As the Chief of Courts Bureau, Defendant Ferguson was responsible for establishing, formulating, implementing and executing the policies, procedures and operations of the Fulton County Superior Court Clerk's Office.

375.   As the Chief of Courts Bureau, Defendant Ferguson had the duty to establish, formulate, implement and execute policies to ensure that Court orders releasing individuals from incarceration were transmitted to the Fulton County jail.

376.   Defendant Ferguson failed to establish, formulate, implement or execute any policy that would ensure that Fulton County Superior Court Clerk's Office transmitted Court such orders to the Fulton County Jail.

377.   In the alternative, should such policy exist, Defendant Ferguson failed to supervise the Fulton County Superior Court Clerk's staff to ensure that the staff transmitted Court orders to the Fulton County Jail.

378.   Defendant Ferguson knew that the false imprisonment and over-detention of persons committed to Fulton County Jail were chronic problems that had existed since at least 2013.

379.   Defendant Ferguson knew that because false imprisonment and over-detention problems existed at Fulton County Jail, more extensive and thorough training of Superior Court Clerk's Office staff, including all Clerk's Office Defendants was necessary.

380.   Despite Defendant Ferguson's knowledge of false imprisonment and over-detention she failed to take any action whatsoever to train Fulton County Superior Court Clerk's staff.

381.   Defendant Ferguson knew that because over-detention and false imprisonment problems existed at Fulton County Jail for years, more extensive and thorough supervision of Clerk's office personnel regarding the timely transmittal of Court Orders to the jail was necessary.

382.   Despite Defendant Ferguson's knowledge of over-detention and the jail staff's failure to obey Court orders, she failed to take any action whatsoever to supervise Clerk's Office staff regarding the transmittal of Court Orders to the Fulton County Jail.

383.   Despite Defendant Ferguson's knowledge of false imprisonment and over-detention at Fulton County Jail and the Clerk's staff's failure to transmit court orders, she failed to take any corrective action whatsoever to alleviate the problem.

384.   The failures of Defendant Ferguson to implement policies, practices, and customs necessary to ensure the prompt transmittal of Court Orders to the Fulton County Jail, Clerk's Office personnel routinely failed to transmit Court orders to the Fulton County Jail resulting in the continued, unlawful imprisonment of individuals who the Court had ordered released.

385.   The above-described widespread practice of failing to transmit court orders, were so well settled as to constitute the *de facto* policy of the Clerk's office.

386.   Defendant Ferguson acted with deliberate indifference regarding the failure to transmit Court orders to the Fulton County Jail, thereby effectively ratifying the failure as a policy.

387.   The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer false imprisonment, deprivation of freedom and liberty and other damages.

388.   Defendant Ferguson's deliberate indifference, as alleged, was a proximate cause of damages to Plaintiff.

389. At all times alleged, Defendant Lanier was the Chief Deputy Clerk of the Superior and Magistrate courts of Fulton County.

390. At all times alleged, Defendant Lanier was acting under color of law.

391. As the Chief Deputy Clerk, Defendant Lanier was responsible for establishing, formulating, implementing and executing the policies, procedures and operations of the Fulton County Superior Court Clerk's Office.

392. As the C Chief Deputy Clerk, Defendant Lanier had the duty to establish, formulate, implement and execute policies to ensure that Court orders releasing individuals from incarceration were transmitted to the Fulton County jail.

393. Defendant Lanier failed to establish, formulate, implement or execute any policy that would ensure that Fulton County Superior Court Clerk's Office transmitted Court such orders to the Fulton County Jail.

394. In the alternative, should such policy exist, Defendant Lanier failed to supervise the Fulton County Superior Court Clerk's staff to ensure that the staff transmitted Court orders to the Fulton County Jail.

395. Defendant Lanier knew that the false imprisonment and over-detention of persons committed to Fulton County Jail were chronic problems that had existed since at least 2013.

396. Defendant Lanier knew that because false imprisonment and over-detention problems existed at Fulton County Jail, more extensive and thorough training of Superior Court Clerk's Office staff, including all Clerk's Office Defendants was necessary.

397. Despite Defendant Lanier's knowledge of false imprisonment and over-detention he failed to take any action whatsoever to train Fulton County Superior Court Clerk's staff.

398.    Defendant Lanier knew that because over-detention and false imprisonment problems existed at Fulton County Jail for years, more extensive and thorough supervision of Clerk's office personnel regarding the timely transmittal of Court Orders to the jail was necessary.

399.    Despite Defendant Lanier's knowledge of over-detention and the jail staff's failure to obey Court orders, he failed to take any action whatsoever to supervise Clerk's Office staff regarding the transmittal of Court Orders to the Fulton County Jail.

400.    Despite Defendant Lanier's knowledge of false imprisonment and over-detention at Fulton County Jail and the Clerk's staff's failure to transmit court orders, she failed to take any corrective action whatsoever to alleviate the problem.

401.    The failures of Defendant Ferguson to implement policies, practices, and customs necessary to ensure the prompt transmittal of Court Orders to the Fulton County Jail, Clerk's Office personnel routinely failed to transmit Court orders to the Fulton County Jail resulting in the continued, unlawful imprisonment of individuals who the Court had ordered released.

402.    The above-described widespread practice of failing to transmit court orders, were so well settled as to constitute the *de facto* policy of the Clerk's office.

403.    Defendant Lanier acted with deliberate indifference regarding the failure to transmit Court orders to the Fulton County Jail, thereby effectively ratifying the failure as a policy.

404.    The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer false imprisonment, deprivation of freedom and liberty and other damages.

405.    Defendant Lanier's deliberate indifference, as alleged, was a proximate cause of damages to Plaintiff.

## Prayer for Relief

Wherefore Plaintiff, demands trial by jury and requests judgment be entered against Defendants and that the Court grant the following:

a) Award of compensatory damages;

b) Award of special damages;

c) Award of punitive damages;

d) Award costs and attorney's fees pursuant to 42 U.S.C. § 1988;

e) Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: June 7, 2024

HALL & LAMPROS, LLP

*/s/ Andrew Lampros*
Andrew Lampros
Ga. Bar #432328
Ligia-Ioana Mensah
Ga. Bar #184438

300 Galleria Parkway SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com
ligia@hallandlampros.com

STATE COURT OF
DEKALB COUNTY, GA.
6/7/2024 5:31 PM
E-FILED
BY: Monica Gay

*Attorney for Plaintiff*

-42-